IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA ANNETTE ZOLLAR, | |
| Plaintiff, | Case No.: 1:24-cv-04114 |
| v. | Judge Sunil R. Harjani |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | Magistrate Judge Maria Valdez |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM ESTABLISHING THAT JOINDER IS PROPER**

Plaintiff, LAURA ANNETTE ZOLLAR ("Zollar" or "Plaintiff"), submits the following memorandum establishing that joinder is proper:

**INTRODUCTION**

This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing versions of Plaintiff's federally registered copyrights (the "Laura Zollar Products"). As part of a coordinated effort to sell infringing Laura Zollar Products, Defendants operate under the online marketplace accounts listed in Schedule A to the Complaint ("Defendant Internet Stores") share common design elements and use aliases to conceal their identities as well as the full scope and interworking of their illegal operation. *See* [1] at ¶ 10. Defendants take advantage of this anonymity, as well as the mass reach afforded by the internet and the cover afforded by international borders, to violate Plaintiff's copyright rights and exploit U.S. consumers. Plaintiff faces a "swarm of attacks" on Plaintiff's rights, and "filing individual causes of action against each infringer ignores the form of harm" that Plaintiff faces. *Bose Corp.*

1

*v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 334 F.R.D. 511, 517 (N.D. Ill. 2020). Joinder is proper because Fed. R. Civ. P. 20's inclusion of the term "occurrence" allows a plaintiff to join in a single case the defendants who participate in such unlawful occurrences.[1] *Id. See also Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22) ("At this preliminary stage and in the absence of adversarial presentation, the Court finds that joinder of 217 Defendants is proper at this time and this case may now proceed."). In the instant case, Plaintiff only seeks to join 167 defendants who appear to be working in concert with one another to sell infringing versions of Plaintiff's registered copyrights to United States and Illinois consumers.

A January 24, 2020, report titled *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security, Office of Strategy, Policy & Plans provides further insight regarding operation of e-commerce stores like the Defendant Internet Stores. *See* **Exhibit 1** to the Declaration of Keith A. Vogt (the "Vogt Dec."). Specifically, the report found that:

- "Not only can counterfeiters set up their virtual storefronts quickly and easily, but they can also set up new virtual storefronts when their existing storefronts are shut down by either law enforcement or through voluntary initiatives set up by other stakeholders such as market platforms, advertisers, or payment processors." *Id.* at p. 12.

- "In some cases, counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual

---

[1] Northern District of Illinois Eastern Division judges assigned to factually similar cases have routinely permitted joinder. This includes twenty-five different judges that have entered similar temporary restraining orders in 2020 (i.e., the majority approach). In 2019, two judges in this District changed positions on joinder and now take a narrower view (i.e., the minority approach). This Court in particular has recently followed the majority approach when confronted with factually similar cases. Section III infra. Vogt Dec. at ¶ 4.

store-fronts. A key underlying problem here is that on at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling. In the absence of full transparency, counterfeiters can quickly and easily move to a new virtual store if their original third-party marketplace is taken down." *Id.* at p. 22.

- "Platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, nor to link one seller profile to other profiles owned by that same business, or by related businesses and owners. In addition, the party that appears as the seller on the invoice and the business or profile that appears on the platform to be the seller, may not always be the same. This lack of transparency allows one business to have many different profiles that can appear unrelated. It also allows a business to create and dissolve profiles with greater ease, which can obfuscate the main mechanism that consumers use to judge seller credibility, namely reviews by other buyers." *Id.* at p. 39.

Well-pleaded allegations in Plaintiff's Complaint establish that Defendants are working in a similar manner and during the same time period to sell infringing Laura Zollar Products, as part of the same "occurrence" of mass harm, *i.e.*, the swarm of all Defendants attacking Plaintiff's federally registered copyrights at once. *Bose Corp.*, 334 F.R.D. at 516. This establishes a logical relationship supporting joinder. Joinder at this stage is consistent with hundreds of factually similar cases[2] and comports with the strongly encouraged policy of "entertaining the broadest possible

---

[2] Similar cases against multiple e-commerce store seller aliases have been filed across the country for over a decade. *See, e.g. Farouk Systems, Inc. v. Eyou Int'l Trading Co., Ltd., et al.*, No. 4:10 CV 2672 (S.D. Tex. Aug. 2, 2010); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 10 CIV 1630 (S.D.N.Y. Mar. 16, 2010); *Louis Vuitton Malletier v. aaalvshop.com, et al*., No. 19- cv-61986 (S.D. Fla. Nov. 21, 2019); *Volvo Car Corporation, et al. v. The Unincorporated Associations Identified in Schedule A*, No. 18-cv-00977 (E.D. Va. Feb. 6, 2019); *CCA and B, LLC v. Douyong toy, et al*., No. 19-cv-01851 (N.D. Ga. Apr. 25, 2019); *Talavera Hair Products, Inc. v. Taizhou Yunsung Elec. Appliance Co., Ltd., et al*., No. 18-cv-00823 (S.D. Ca. Apr. 30, 2018), including hundreds of cases in the Southern District of New York and the Southern District of Florida. *See* Vogt Dec. at ¶ 3.

scope of action consistent with fairness to the parties." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); s*ee also Bose Corp.*, 334 F.R.D. at 517 (e-commerce stores offering for sale counterfeit Bose products properly joined); *see also see also Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22) ("At this preliminary stage and in the absence of adversarial presentation, the Court finds that joinder of 217 Defendants is proper at this time and this case may now proceed."); *Weifang Tengyi Jewelry Trading Co. Ltd v. The Partnerships, et al.*, No. 1:18-cv-04651 (N.D. Ill. July 5, 2018) (unpublished) (Docket No. 150) ("[Plaintiff's] claims against [Defendants] rest in substantial part on the same legal and factual grounds as [Plaintiff's] claims against the other defendants, including that [Defendants] were involved in a infringing network with the other defendants. Given the nature of [Plaintiff's] claims, joinder is proper under Civil Rule 20(a)(2)."); *Too Faced Cosmetics, LLC v. Operators of KTKT Store, et al.*, No. 19-cv-07762 (N.D. Ill. Feb. 12, 2020) (Lefkow, J.) (docket entries 22, 27, 30) (finding joinder appropriate in factually similar case after supplemental briefing); *Gold's Gym Licensing LLC v. Operators of dropshipping fast ship Store, et al.*, No. 19-cv-07446 (N.D. Ill. Jan.15, 2020) (Lefkow, J.) (docket entries 32, 38, 43) (same); *Otter Products, LLC, et al. v. James Chen, et al.*, No. 16-cv-06807 (N.D. Ill. Aug. 31, 2016) (Shadur, J.) (same). Indeed, cases like this one have proven effective at substantially reducing online infringement and preventing consumer confusion.

I.    **LEGAL STANDARD**

    **A.  Permissive Joinder Under Fed. R. Civ. P 20(a)**

The Supreme Court has stated that under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *In re EMC Corp.*, 677 F.3d 1351,

1358 (Fed. Cir. 2012) (quoting *Gibbs*, 383 U.S. at 724). Above all, the Seventh Circuit has noted that the purpose of a liberal Rule 20(a) joinder requirement "is to enable economies in litigation." *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Courts have not provided a bright-line definition for this phrase so that it can continue to be flexible enough to allow effective trial management. *See In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1653 (3d ed. 2001)).

As to the first prong of Fed. R. Civ. P. 20(a)(2), courts have applied this "transaction or occurrence" requirement using a "case-by-case approach" based on a "flexib[le] . . . standard [that] enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *In re EMC Corp.*, 677 F.3d at 1358. The Seventh Circuit has not fashioned a definitive standard for determining what constitutes a single transaction or occurrence. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (explaining that "no hard and fast rules have been established" in this context). Similarly, the phrase "transaction or occurrence" is not defined in Rule 20(a); however, courts have looked to the similar "transaction or occurrence" test for compulsory counterclaims in Rule 13(a). *Mosley*, 497 F.2d at 1333; *PTG Nev., LLC v. Doe*, 2016 U.S. Dist. LEXIS 83546, at *7 (N.D. Ill. June 28, 2016).

For the purposes of Rule 13(a), the Supreme Court has stated that "[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. N.Y. Exch.*, 270 U.S. 593, 610 (1926); *see also Burlington N.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990) (applying "logical relationship" test to determine whether the "transaction or occurrence" is the same for purposes of Rule 13(a)). Factors considered by Courts in this District

include whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct. *Lozada v. City of Chicago*, 2010 U.S. Dist. LEXIS 89231, at *7 (N.D. Ill. Aug. 30, 2010). The Court has "considerable discretion" and "flexibility" in determining whether Plaintiff have plausibly alleged such a relationship. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018). Other Circuits have applied the "logical relationship" test to interpret "same transaction or occurrence" as it appears in Rule 20(a) and found that "all reasonably related claims for relief by or against different parties" can be tried in a single proceeding. *Mosley*, 497 F.2d at 1333. Absolute identity of all events is unnecessary. *Id.*; *see also Alexander v. Fulton County*, 207 F.3d 1303, 1323 (11th Cir. 2000).

Fed. R. Civ. P. 20 similarly does not define "occurrence" and courts have not considered the meaning of "occurrence" apart from the meaning of "transaction." *Bose Corp.*, 334 F.R.D. at 516. However, "canons of construction ordinarily suggest that terms connected by a disjunctive . . . be given separate meanings," and the dictionary definitions suggest that "occurrence" is much broader than "transaction." *Id.* An "occurrence" is defined as something that simply happens or appears, and is not necessarily the product of joint or coordinated action. *Id.; see also Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22) ("At this preliminary stage and in the absence of adversarial presentation, the Court finds that joinder of 217 Defendants is proper at this time and this case may now proceed.").

## II. WELL-PLEADED ALLEGATIONS ESTABLISH JOINDER

"In assessing whether the requirements of Rule 20(a)(2) are met, courts must accept the factual allegations in a plaintiff's complaint as true." *Desai v. ADT Sec. Services, Inc.*, 2011 U.S. Dist. LEXIS 77457, at *8 (N.D. Ill. July 18, 2011). A court must construe the complaint "in the

6

light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plaintiff must only put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th. Cir. 2009).

Plaintiff's well-pleaded allegations[3] establish that the Defendant Internet Stores are all operating in the same transaction, occurrence, or series of transactions or occurrences and, therefore, joinder is proper. Each of the Defendant Internet Stores fit into the following profile: (1) Defendants conceal their identities and the full scope of their piracy operations in an effort to deter Plaintiff from learning Defendants' true identities ([1] at ¶¶ 7, 10, 14, 28, 30), (2) no credible information regarding Defendants' physical addresses is provided ([1] at ¶¶ 14, 30), and (3) Defendants show evidence of market coordination while attempting to evade enforcement ([1] at ¶¶ 26-34). In this case, for example, a well-pleaded fact is that the Defendant Internet Stores go to great lengths to conceal their identities by using multiple fictitious names and addresses to register their massive network of Defendant Internet Stores. [1] at ¶ 7, 28, 30*; see also* Vogt Dec. at ¶ 6.

Additional well-pleaded facts include that "Defendant Internet Stores share unique identifiers, such as design elements and similarities of the unauthorized products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences" [1] at ¶¶ 7, 10, 14. For example, many of the item titles used by the Defendant Internet Stores are nearly

---

[3] Plaintiff's allegations are referring to unique identifiers, not just general common elements found on e-commerce stores. The Court should avoid speculating that the unique identifiers are a coincidence and that Defendants are merely acting similarly, but independently of each other. The Court must construe the complaint "in the light most favorable to plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences" in favor of plaintiff. *Tamayo*, 526 F.3d at 1081.

identical or very similar to one another. Vogt Dec. at ¶ 5. Plaintiff's counsel has observed dozens of instances where a single individual or company is revealed to operate 25 or more stores within a single case. Plaintiff's counsel has also observed instances where a single individual or company operates over 100 Defendant Internet Stores in a case. *See* Vogt Dec. at ¶ 7.

Plaintiff's specific factual allegations that Defendants are working in a similar manner and during the same time period to sell Pirated Laura Zollar Products, collectively in the same "occurrence of mass harm," show a logical relationship supporting joinder. *Bose Corp.*, 334 F.R.D. at 516. Even if Defendants are not directly coordinating, Plaintiff alleges that Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's intellectual property] with impunity." *Id.* "[I]t is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination." *Id.* Defendants are alleged to be infringers, and "want to blend in to cause consumer confusion." *Id.* at 514. As a result, it is not possible to link all or clusters of internet stores together using arbitrary commonalities. Likewise, Plaintiff is not required to show and provide evidence that each of the Defendant Internet Stores is commonly owned at the pleading stage. Such linking efforts are extremely cumbersome and time consuming and not required by Fed. R. Civ. P. 20 to join multiple Defendant Internet Stores at the pleading stage, especially without adversarial presentation and the opportunity to conduct discovery, as this Court recently held in a factually similar case. *Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22).

### III. THE MINORITY APPROACH IN THIS DISTRICT DOES NOT PERMIT JOINDER OF ANY DEFENDANTS

As explained above, there is no controlling Seventh Circuit authority defining a single transaction or occurrence for purposes of joinder. Two Courts in this District have taken a narrower position than *Bose Corp.* (and the other twenty-six Courts in this District) and define "transaction, occurrence or series of transactions and occurrences" to require linking unique information between Defendant Internet Stores (e.g., email addresses, phone numbers, etc.). *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 334 F.R.D. 182, 184 (N.D. Ill. 2020) (Chang, J.) ("*Estée Lauder*") (together, the "Minority Approach Decisions"). This narrow approach does not permit joinder of any defendants. Rather, it requires that plaintiff show that multiple e-commerce store seller aliases are operated by the same individual or entity, i.e., a single defendant. Moreover, the information required to meet such a stringent requirement is typically not available prior to court ordered discovery, and even if it was, could easily be circumvented by defendants using false or different information.

The Minority Approach Decisions rely on distinguishable cases, construe allegations in the light most favorable to defendants,[4] and undervalue certain considerations of judicial economy. For example, both cite the non-binding *Slep-Tone Entm't Corp. v. Roberto* case for the proposition that multiple defendants alleged to have infringed the same patent or trademark in a similar manner is not sufficient to establish joinder. 2013 U.S. Dist. LEXIS 151923, at *2 (N.D. Ill. Oct. 22, 2013).

However, in *Slep-Tone Entm't Corp.*, the defendants were identifiable, distinct individuals and restaurants providing karaoke entertainment. *Id.* There were no allegations in *Slep-Tone*

---

[4] A court must construe the complaint "in the light most favorable to the plaintiff, accepting as true all well- pleaded facts alleged, and drawing all possible inferences" in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

9

*Entm't Corp.* that the defendants were unknown and working in a similar manner and during the same time period as part of the same "occurrence" of mass harm, i.e., the swarm of Defendants selling Pirated Laura Zollar Products attacking Plaintiff's federally registered copyrights at once. *See Bose Corp.*, 334 F.R.D. at 516. The Minority Approach Decisions also construed facts in the light most favorable to the defendants by downplaying other commonalties between seller aliases as merely coincidental. *See, e.g., Estée Lauder*, 334 F.R.D. 188-89 ("[i]t is just as likely that each online retailer decided to avoid being shut down yet again by removing the trademarks").

Finally, recognizing that nearly all defendants settle or default in similar cases, the Minority Approach Decisions reason that "this Court must evaluate the evidence submitted in support of liability and, eventually, damages" which the Court reasoned undermines judicial economy. *Estée Lauder,* 334 F.R.D. at 189. However, allegations in the complaint are accepted as true if a defendant defaults, so there would not be any evidence beyond plaintiff's allegations to evaluate with respect to liability. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). Regarding a damages award, such a concern is not applicable in this case because Plaintiff will likely be seeking a statutory damages award pursuant to 17 U.S.C. § 504(c). *See, e.g., Chapter 4 Corp. v. Fopu Import and Export Co., Ltd. Store, et al.,* No. 20-cv-04736 (N.D. Ill. Oct. 27, 2020) (Docket No. 49). Both Minority Approach Decision Courts, like other Courts in this District, have formulated baseline statutory damages awards for defaulting defendants who do not appear or participate in the litigation.[5] There is no "ensuing discovery and variety of defenses" to evaluate when a defendant defaults. *Estée Lauder*, 334 F.R.D. at 190.

---

[5] The Minority Approach Decision Courts have formulated such a statutory damages award in their over sixty cases. The vast majority of those awards were in the bottom 25% of the $1,000 - $2 million statutory damages range provided by 15 U.S.C. § 1117(c).

## IV. WELL-PLEADED ALLEGATIONS SATISFY FED. R. CIV. P. 20(A)(2)(B)

Plaintiff's well-pleaded allegations also satisfy Fed. R. Civ. P. 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." In this case, Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Laura Zollar Copyrights in connection with the advertisement, distribution, offering for sale, and sale of Infringing Laura Zollar Products into the United States and Illinois over the internet. [1] at ¶ 34. In addition, the methods Plaintiff will use to investigate, uncover, and collect evidence about any infringing activity will be the same or similar for each Defendant. While each Defendant may later present different factual evidence to support individual legal defenses, prospective factual distinctions do not defeat the commonality in facts and legal claims that support joinder under Fed. R. Civ. P. 20(a)(2)(B) at this stage in the litigation. *See First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. 2011) (Castillo, J.).

## V. JOINDER IS CONSISTENT WITH FAIRNESS, CONVENIENCE, AND JUDICIAL ECONOMY

Joinder at this stage also serves the important interests of convenience and judicial economy, leading to a just, speedy, and inexpensive resolution for Plaintiff, Defendants and this Court. Joinder does not create any unnecessary delay nor does it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike. Defendants may be required to defend identical, concurrent lawsuits if severed prematurely into separate cases. Additionally, the Federal Rules of Civil Procedure only apply to the extent that they "affect any party's substantial rights." Fed. R. Civ. P. 61; *see also Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 U.S. Dist. LEXIS 1311, at *12 (E.D. Va. Jan. 5, 2012). Plaintiff anticipates that Defendants will be individually subject to default, and "there is no prejudice to any defaulting defendant,

11

whose liability may be established upon default irrespective of the presence of any other defendant." *Id.; Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22) ("Moreover, no defendants will be prejudiced by permitting joinder at this juncture").

The resources of the Court, other judges in this District, and other Districts will be substantially taxed if Plaintiff's claims against Defendants are severed into multiple separate lawsuits. "Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the Lanham Act." *Bose Corp.*, 334 F.R.D. at 517, n.6. The minority view illustrates the inefficiencies identified in *Bose Corp.* that result from narrow approaches to joinder. Importantly, such impediments would also reduce the ability of Plaintiff and other brand owners to effectively protect their intellectual property rights and consumers in a cost-effective manner. This is especially true in the context of online infringement and piracy. Online piracy is a rampant and widespread issue for brand owners because, in recent years, marketplace platforms have emphasized opening and marketing their services to sellers located in China[6] seeking to sell directly to U.S. consumers. Vogt Dec. at ¶ 8. In the 2021 fiscal year alone, the U.S. government

---

[6] The leader of Alibaba's Anti-Counterfeiting Special Task Force noted that "[a]fter we clean up online shops selling counterfeits, the counterfeiters usually change their identities and places of dispatch, using more covert means to continue selling online ... Most counterfeiting dens are hidden and well-organized. For example, we encountered a village producing counterfeits. The villagers installed cameras everywhere and when they saw outsiders entering, they became vigilant and even threatened us." Vogt Dec. at ¶ 9.

seized unauthorized goods worth more than $3.3 billion based on MSRP of genuine goods, and China and Hong Kong together accounted for the majority of all seizures. *Id.* at ¶ 10.

Cases like the present case are one of the few effective mechanisms for stopping and deterring online piracy. In sum, Plaintiff's well-pleaded allegations establish that the named Defendant Internet Stores are participating in the same unlawful occurrence or series of occurrences and that joinder is proper. Plaintiff (as well as other brand owners) would be severely prejudiced if it were required to file separate lawsuits simply because Defendants registered a particular e-commerce store using a different online marketplace. *Shambour v. Carver County*, 2014 U.S. Dist. LEXIS 110267, at *17 (D. Minn. Aug. 11, 2014) ("In the matter at hand, joinder is proper because the alleged acts similarly support a larger allegation of a systemic problem and the Court is persuaded that keeping [plaintiff's] claims together is not only permissible but preferable."); *see also Microsoft Corp. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 24-cv-03255 (N.D. Ill. May 15, 2024) (Docket Entry 22) ("Moreover, no defendants will be prejudiced by permitting joinder at this juncture").

## CONCLUSION

For the reasons set forth above, joinder of Defendants is proper. This approach is consistent with other courts and comports with the strongly encouraged policy of entertaining the broadest possible scope of action consistent with fairness to the parties.

DATED: May 29, 2024                                      Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail: keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**